Filed 12/5/25  P. v. Bryant CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063490 |
| v. | (Super. Ct. No. 19HF0801) |
| RICKEY LAVELL BRYANT, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge. Affirmed as corrected.

Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Appellant Rickey Lavell Bryant, Jr., was convicted of second degree robbery and petty theft based on two separate incidents at a Target store. On appeal, Bryant contends that this Court should reverse his convictions because the trial court failed to instruct jurors to restart deliberations once an alternate was seated. Respondent maintains that the conviction should be affirmed because deliberations had not begun prior to the substitution of the alternate. Bryant further requests that this court conduct an independent review of the records reviewed *in camera* by the trial court during a *Pitchess* hearing. Finally, Bryant identifies an error in the trial court's minutes and abstract of judgment with respect to his sentence. Respondent acknowledges that Bryant is correct, and agrees with the proposed corrections. We agree. Other than the minutes and abstract of judgment, we find no error, and therefore order both corrected. We affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 25, 2016, Nicholas Rivas-Lopez, a loss prevention officer (LPO), observed two individuals enter a Target store in Orange County. Rivas-Lopez recognized the individuals from a LPO internal communication warning of recent liquor thefts in various stores. He observed them on the video surveillance system from within the LPO office. The parties later stipulated that Rivas-Lopez identified Bryant as one of the suspects. Rivas-Lopez watched as Bryant and his companion filled a shopping cart with $534.38 worth of liquor.

After monitoring the surveillance footage, Rivas-Lopez left his office and contacted the suspects. He identified himself as a LPO and told them he would call the police if they exited the store without paying. Bryant then turned towards Rivas-Lopez and threatened to stab him if he followed

2

them out of the store. When Bryant made this threat, he placed his hand in his pocket. Rivas-Lopez stepped back out of fear for his safety, returned to the LPO office, and called the police. Bryant and his accomplice exited the store without paying for the merchandise, and left in a red or burgundy sedan.

A few weeks later, on July 11, 2016, Rivas-Lopez witnessed Bryant and the same companion enter the same Target store. This time, Rivas-Lopez watched the individuals through the store's video surveillance system and called the police because he had been told not to approach them if they returned. Bryant and his companion once again filled a shopping cart with $570.84 worth of alcohol, exited the store without attempting to pay, and left in a red vehicle.

On April 25, 2023, the Orange County District Attorney's Office charged Bryant with second degree robbery (Pen. Code, §§ 211/212.5, subd. (c);[1] count one), criminal threats (§ 422, subd. (a); count two), and grand theft (§ 487, subd. (a); count three). As to counts one and two the prosecution alleged Bryant used a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)). The information also charged Bryant with having been previously convicted of a "strike" (§ 667, subds. (d), (e)(1)) and a serious prior felony (§ 1170.12, subds. (b), (c)(1)).

Trial began on April 20, 2023. Both incidents were captured on surveillance video and the footage was shown to the jury. On April 27, 2023, the prosecution dismissed the deadly weapon enhancement and the jurors retired to deliberate. The jurors found Bryant guilty of robbery (count one) and of the lesser-included offense of petty theft (count three). He was found

---

[1] All further undesignated statutory references are to the Penal Code.

not guilty of making criminal threats (count two) and of grand theft (count three). Bryant waived his right to a jury trial on his prior offense allegations and admitted the "strike" and prior serious felony.

At sentencing, the court imposed the middle term of three years, doubled for a total term of six years, and struck the prior serious felony finding. Sentence on count three was stayed. Appropriate custody credits were awarded. Bryant filed a timely notice of appeal.

DISCUSSION

I.

THE TRIAL COURT PROPERLY HANDLED THE REPLACEMENT OF A JUROR

On appeal, Bryant argues that the trial court did not properly instruct the jury to begin deliberations anew after an alternate was seated. Respondent contends no additional instructions were required as the jury had not begun deliberating.

On April 27, 2023, a Thursday, the court gave the jury its final instructions. Prior to sending the jury to the jury room to begin deliberations, the court made the following comments:

"So ladies and gentlemen, it's kind of getting a little late in the day and it's been a long day . . . . So what I was [going to] propose is that we recess for the day and that you begin your deliberations. I had said that we were not in session on Fridays for jury trials and that's true, we don't do jury trials on Fridays but we do do deliberations on Friday.

"Now, I realize that I told you that we wouldn't be in session on Friday, so if that poses a scheduling problem for anybody—I'm seeing a few nodding heads that it does. . . . [W]hat I'll do then is just remind you not to form or express any opinion about the case, don't talk about the case. I'm

4

going to ask the alternates to remain behind for a moment, but the 12 jurors are free to go. But I need you to return here on Monday.

"Now, I know from a scheduling standpoint as well when it comes to deliberating jurors, I let the jury decide when they want to start. And if they want to take a shorter lunch hour, whatever. So if you want to come back Monday at 9:00, that's fine with the court. I don't want to make it too early because, again, I know people have probably made plans to drop off kids.

"*Is 9:00 am on Monday agreeable with everybody? Seeing no indication there's any problems with that. So I'll direct the 12 of you, just the 12 of you to return Monday at 9:00. . . .*

"*So I look forward to seeing you all on Monday morning at 9:00.* Appreciate your attendance and patience throughout this very brief trial, and I hope you have a very nice weekend and I look forward to seeing you all on Monday morning, and if the alternates can stand by just one second." (Italics added.)

The court excused the jurors and addressed the alternates. Prior to giving additional instructions to the alternates, the court said, "We're still on the record, both counsel present, the defendant's present, the jury has been released for the afternoon . . . ." Then the court excused the alternates, remained on the record with the attorneys, and stated, "We're still on the record, both counsel present, the defendant is present, the alternates have now been excused for the day as well. I hope [excusing the jury] was okay. I didn't want to get [the jury] started [at] 3:35, don't like it when they feel rushed, although I know weekend deliberations are no fun." The court's minutes reflect that the jury retired to the jury room at 3:20 p.m., and left at 3:23 p.m.

The following Monday, May 1, 2023, one of the jurors called the court and informed the clerk that he or she had tested positive for COVID-19. The court replaced the juror with an alternate. The court's minutes reflect that the jury commenced deliberations at 9:39 a.m. Later that same day, after the verdicts had been received, defense counsel advised the court that neither party had been notified of the substitution before it happened. The court asked defense counsel if she wished to be heard on that issue, and she declined.

On September 6, 2024, the trial court conducted a settled statement hearing at Bryant's request. Bryant asked the court to answer several questions regarding the replacement of the juror. Prior to answering the questions, the court offered an explanation for why it had such a vivid recollection of the case:

"Ordinarily, it might be strange that the court would have such a specific recollection of a case. I do about 25 felony trials a year. Why would I remember what happened on this one? [¶] And the reason I remember what happened on this one was because something unusual happened during the course of the verdict. That is, that Mr. Bryant absconded and—he was out of custody and he fled. He eventually turned himself in. That's all a separate story. It's not important. But I just wanted to articulate that as to why I remember this case because it was unusual."

As to the court's minute order and whether the jury began deliberations when they were released on Thursday, April 27, 2023, the court stated: "[T]he relevant part [of the minutes] is as follows—'At 3:20 p.m., the jury retired to the jury room to deliberate in charge of [bailiff], duly sworn for that purpose.' [¶] The next entry says, 'At 3:23 p.m., the jurors left the jury

6

room for the evening recess to return May 1st, 2023, at 9:00 a.m. in Department C29 to resume deliberations.'"

The court continued: "This is an error. This is incorrect. *The jury did not begin deliberating and I need to state that.* [¶] And I have an express recollection of as much and I think that that is borne out circumstantially by the fact that the minutes reflect the jury retiring to the jury room at 3:20 p.m. and then leaving the jury room at 3:23 p.m., three minutes later. [¶] What occurred clearly is that the jury did not begin deliberations at all and I don't even believe they entered the jury room." (Italics added.) The court went on to state it had then replaced the juror who had called in with COVID with an alternate. The court said it had directed the clerk to notify counsel, which apparently did not happen until just before the verdicts came in.

In response to Bryant's questions, the court clarified that the jury had not yet begun deliberating before the juror substitution. The court commented: "I am certain that they did not start deliberating. It was late in the afternoon. And, again, consistent with my habit and custom, I'm not going to send a jury to start deliberating for 15 minutes, not the least of reasons which is because it's my personal opinion that it can lead to jurors feelings rushed to reach a verdict quickly so they don't have to come back. I avoid that at all costs just as a standard approach to circumstances like that, a jury finishing instruction, then being ready to deliberate at 3:30 in the afternoon. I'm going to tell them to come back the next day. I know that's what I would do. I know that is what I did do."

The court also explicitly recalled that it did not read CALCRIM No. 3575 after the alternate juror was replaced because the jury had not begun its deliberations. Additionally, the court asked the parties if they agreed with the proposed settled record, and neither party objected.

7

Taken together, there is no evidence from the record that the jury began deliberating before the juror substitution. Accordingly, the court had no duty to instruct the jury with CALCRIM No. 3575, which directs jurors to begin deliberations anew after a juror is replaced. The duty to do so exists only if the substitution occurs after deliberations have commenced, which was not the case here. (*People v. Jones* (2013) 57 Cal.4th 899, 978–979.)

Even before the settled statement hearing, the record did not support Bryant's contention. The reporter's transcript reflects that the court discussed scheduling with the jury, ordered them to return at 9:00 in the morning on the following Monday, and then dismissed the jury, telling them they were "free to go."

Bryant hangs his hat completely on the statement in the minutes that "At 3:20 PM, the Jury retired to the jury room to deliberate . . . ." Even if this did not read like an auto-text entry, the court clarified at the settled statement hearing requested by Bryant that this was "incorrect. The jury did not begin deliberating . . . ." The minutes reflect that the jury went to the jury room for only three minutes, and any claim that "deliberations" happened during those three minutes, following the court's dismissal, is pure speculation. If Bryant can find evidence that exists outside the record on appeal, he is free to seek relief through a habeas proceeding.

Even if the court erred in failing to instruct the jury to begin deliberations anew, the error is harmless. Error in failing to provide the proper admonishment to a jury after substitution of an alternate juror is harmless if it is reasonably probable that the defendant would not have achieved a better result without the error. (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1031–1032; *People v. Renteria* (2001) 93 Cal.App.4th 552, 554 (*Renteria*).) Factors to consider in determining whether such an error

8

was harmless include whether the case was close in terms of guilt and innocence and the difference in deliberations before and after juror substitution. (*People v. Proctor* (1992) 4 Cal.4th 499, 537 (*Proctor*).)

Courts have found reversible error for improperly instructing a jury upon substitution of an alternate when the case was "close." (*People v. Martinez* (1984) 159 Cal.App.3d 661, 665; see *Renteria, supra*, 93 Cal.App.4th at p. 561 [case deemed "close" because the only eyewitness to the crime did not testify that the defendant committed the crime].) However, the same error has also been found harmless when evidence of a defendant's guilt was "strong." (*Proctor, supra*, 4 Cal.4th at p. 537.)

It is not reasonably probable that Bryant would have received a different verdict had the court instructed the jurors to restart their deliberations after the alternate was seated. The evidence against Bryant was overwhelming. Additionally, there were very few issues for the jury to resolve because the parties stipulated to Bryant's identification as the person captured on the surveillance video, on both occasions Bryant's thefts from the store were captured on video, and the videos were shown to the jury.

Here, once the alternate replaced the ill juror, the jury deliberated for approximately three hours. This scenario resembles *Proctor*, in which the jury deliberated for less than one hour prior to substitution and for two and a-half days after the change. (*Proctor, supra*, 4 Cal.4th at pp. 537–538; see *Guillen, supra*, 227 Cal.App.4th at p. 1032 [harmless error where "duration of deliberations *prior to* substitution of the alternate juror was minimal compared to deliberations *after* substitution of the alternate juror"].)

This three-hour deliberation following the substitution demonstrates a lengthy and meaningful discussion, as opposed to a quick

9

decision that may be more indicative of a jury not beginning discussions anew or reviewing the evidence with the new juror. (*Renteria, supra*, 93 Cal.App.4th at pp. 560–561.) Although Bryant argues this was a "close" case because the jury acquitted him of threatening the LPO, we are more convinced that this acquittal demonstrates that the jury critically evaluated the evidence and the credibility of the witness. Given the strength of the evidence against Bryant, it was not reasonably probable that he would have received a different result had the jury been instructed to restart deliberations. Accordingly, even if there was error, it was harmless.

## II.

### THE TRIAL COURT PROPERLY REVIEWED *PITCHESS* MATERIALS

Rivas-Lopez, the LPO officer who conducted the investigation at the Target store, became employed by the Los Angeles Sheriff's Department after the robberies. Prior to trial, Bryant brought a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, seeking disclosure of Rivas-Lopez's personnel records related to excessive use of force, falsifying police reports, and other misconduct. The court held an in camera hearing and found there was no discoverable material. Bryant requests our independent review of the court's hearing. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1232.)

A trial court has broad discretion in ruling on both the good cause and disclosure components of a *Pitchess* motion, and its ruling will not be disturbed on appeal absent an abuse of that discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) A sealed transcript of the *in camera* hearing was made part of the appellate record. After reviewing that transcript, we conclude that the trial court did not abuse its discretion in refusing to disclose the contents of Rivas-Lopez's file.

10

## III.

### THE ABSTRACT OF JUDGMENT AND MINUTES SHALL BE CORRECTED

Bryant argues that the abstract of judgment and trial court minutes incorrectly indicate that the trial court imposed the low term for second degree robbery, when the oral record demonstrates that the trial court sentenced him to the mid-term. Respondent acknowledges that Bryant is correct, and agrees with the proposed corrections.

On November 8, 2023, the trial court sentenced Bryant to the *middle* term (three years) for count one, doubled, pursuant to sections 667, subdivisions (d) and (e)(1), for a total of six years. Notwithstanding the oral record, the court's abstract of judgment and minutes show that the court imposed the *low* term—for a total of six years.[2]

"When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls." (*People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073.)  We order the trial court to correct the minutes and abstract of judgment to reflect the actual sentence imposed during the sentencing hearing. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

---

[2] Pursuant to section 213, subdivision (a)(2), the punishment for second degree robbery is two, three, or five years in state prison.

11

## DISPOSITION

The trial court is ordered to correct the minutes and abstract of judgment as discussed within this opinion, and forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.