[Crim. No. 19365. Aug. 6, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN LEON COLLINS, Defendant and Appellant.

**COUNSEL**

Timothy Connor, under appointment by the Supreme Court, and Stephen J. Perrello, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Alvin Leon Collins was convicted by a jury of three counts of first degree robbery. (Pen. Code, § 211.) After the jury had begun its deliberations an alternate juror was substituted for one of the original jurors. Defendant appeals from the judgment of conviction contending that the substitution violated his constitutional right to trial by jury; that the trial court erred in discharging the original juror merely because she claimed she was unable to perform her duty; and that the substitution without apparent legal necessity or his consent placed him twice in jeopardy. ■ We conclude that the substitution did not meet state constitutional standards but that defendant is nonetheless entitled to no relief.

The cause was submitted to the jury at 3:12 p.m. on the third day of trial. No verdict had been reached by 4:30 p.m. and the jury was excused until the following morning. At that time the court stated that it had received a note from one of the jurors and ordered the removal of the remaining eleven jurors, after admonishing them not to discuss the matter. The court then read the following note in the presence of the juror who had written the same, defendant and both counsel: "Judge Lopardo: I am the juror in number two position now deliberating the case of People versus Collins. I want to be excused from this deliberation on the grounds that I find myself now unable to follow the Court's instructions concerning deliberation."

The court questioned the juror after first warning her not to reveal how she or anyone else voted in the jury room or even if a vote had been taken. She was expressly advised not to give any indication of her view of the guilt or innocence of defendant. She explained that she felt more emotionally than intellectually involved and that she thought she would not be able to make a decision based on the evidence or the law. The juror thought it might help her to read the jury instructions. The court would not allow her to do so but did remind her of her general duties as a juror.

The juror asserted that her inability to follow the evidence and the law was in no way attributable to the personality of any other juror and was not the result of coercion, duress or force applied by any other person. She stated that her inability to make a decision based on the law and the evidence was not a result of her experiences during the deliberations but

rather a result of her inability to cope with the experience of being a juror. She added that her problem developed before deliberations began.

The court felt that an adequate reason had been shown to excuse the juror and that good cause had been shown for dismissing her and substituting an alternate juror. The substitution was made over the objection of defendant who thereafter unsuccessfully moved for a mistrial. The jury was not further instructed following the substitution and the guilty verdicts were returned a few hours later.

The principal question before us is whether the substitution of an alternate for an original juror is constitutionally permissible after deliberations have begun. As hereinafter explained we conclude that such substitution is permissible when good cause has been shown and the jury has been instructed to begin deliberations anew.

Penal Code section 1089 now authorizes upon a showing of good cause the substitution of an alternate juror before or after final submission of a case to the jury.[1] Prior to 1933 section 1089 provided for substitution only before final submission to the jury. ■■■ There is no doubt that such a substitution does not offend constitutional proscriptions. (See *People* v. *Peete* (1921) 54 Cal.App. 333, 362-367 [202 P. 51].)

We have considered the constitutionality of the substitution of an alternate juror after final submission of a case only once since the 1933 amendment of section 1089. (*People* v. *Lanigan* (1943) 22 Cal.2d 569, 578 [140 P.2d 24, 148 A.L.R. 176].) However, we did not undertake in *Lanigan* an analysis of the constitutionality of the amendment. Instead we relied on *People* v. *Von Badenthal* (1935) 8 Cal.App.2d 404 [48 P.2d 82] and *People* v. *Love* (1937) 21 Cal.App.2d 623 [70 P.2d 202], observing that the "amendment was upheld" in *Von Badenthal* and that the contention that post-submission substitution was unconstitutional had been "made and rejected" in *Love*. (*People* v. *Lanigan, supra,* 22 Cal.2d 569, 578.) The *Von Badenthal* majority addressed the question of whether the requirements of section 1089 had been met but did not address the

---

[1]Section 1089 provides in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

question of the constitutionality of a post-submission substitution other than to reject, without discussion, a claim of double jeopardy. (*People* v. *Von Badenthal, supra,* 8 Cal.App.2d 404, 410-413.)[2] *Love* summarily addressed the constitutionality of section 1089, concluding, "We are of the view that this section is constitutional." (*People* v. *Love, supra,* 21 Cal.App.2d 623, 628-629.) The constitutionality of substitution following commencement of deliberations, however, should not rest on so tenuous a basis.

Substitution of an alternate juror upon a showing of good cause is desirable to maintain judicial efficiency. By means of substitution retrial of lengthy cases may be avoided. Substitution, however, may trench upon a defendant's right to trial by jury. (U.S. Const., Amend. VI; Cal. Const., art. I, § 16)[3] and we must therefore examine the nature of that right.

■ "Trial by jury is an inviolate right and shall be secured to all . . . ." (Cal. Const., art. I, § 16.) The right is guaranteed as it existed at common law at the time the state Constitution was adopted and may not be abridged by act of the Legislature. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832]; *People* v. *Kelly* (1928) 203 Cal. 128, 133 [263 P. 226].) The Legislature may, however, establish reasonable regulations or conditions on the enjoyment of the right as long as the essential elements of trial by jury are preserved. (*People* v.

---

[2]The constitutionality of the substitution was raised in a brief dissent which states in full: "I dissent. I am not convinced that the substitution of an alternate juror for a regular juror after the jury has had the case under submission and has considered it sufficiently to have submitted the individual opinions of its members to a vote upon the question of guilt is a trial by one jury within the meaning of the term, historically speaking, or as it is used in our Constitution." (*People* v. *Von Badenthal, supra,* 8 Cal.App.2d 404, 413; Stephens, P. J., dissenting.)

[3]We perceive the question herein as controlled by defendant's right to trial by jury as guaranteed by the state Constitution. The constitutionality of substitution of jurors relates to the number of jurors required to hear a case and unanimity of the verdict. California requires a 12-person jury and a unanimous verdict in felony prosecutions. (Cal. Const., art. I, § 16; Code Civ. Proc., § 194; *People* v. *Superior Court (Thomas)* (1967) 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623, 25 A.L.R.3d 1143].) The Sixth and Fourteenth Amendments do not compel nor prohibit juries of less than 12 in state criminal trials. (*Williams* v. *Florida* (1970) 399 U.S. 78, 86-103 [26 L.Ed.2d 446, 452-462, 90 S.Ct. 1893].) Similarly they neither compel nor prohibit state requirements that jury verdicts be unanimous. (*People* v. *Feagley* (1975) 14 Cal.3d 338, 350, fn. 10 [121 Cal.Rptr. 509, 535 P.2d 373]; *Johnson* v. *Louisiana* (1972) 406 U.S. 356 [32 L.Ed.2d 152, 92 S.Ct. 1620]; *Apodaca* v. *Oregon* (1972) 406 U.S. 404 [32 L.Ed.2d 184, 92 S.Ct. 1628].) Consequently we do not believe the result we reach fails to satisfy minimum federal constitutional standards.

*Peete, supra,* 54 Cal.App. 333, 363-364.) ■ Among the essential elements of the right to trial by jury are the requirements that a jury in a felony prosecution consist of 12 persons and that its verdict be unanimous. (Cal. Const., art. I, § 16; Code Civ. Proc., § 194; *People* v. *Superior Court (Thomas), supra,* 67 Cal.2d 929, 932.)

Petitioner contends that the foregoing elements of the right to a trial by jury are part of the broader right which additionally requires each juror to have engaged in all of the jury's deliberations. We agree. The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity.

■ We thus reject the People's contention that substitution of an alternate juror after deliberations have begun under the authority of section 1089 does not offend the constitutional mandate when deliberatins are not commenced anew. But we also reject defendant's contention that a mistrial must be declared when a juror is dismissed for good cause after deliberations have begun. To declare a mistrial would surely present the opportunity to satisfy the essential requirement that a verdict be unanimously reached by 12 fully participating jurors in a subsequent retrial, but the right to trial by jury does not require a declaration of a mistrial when a properly qualified alternate juror is available and that juror fully participates in all of the deliberations which lead to a verdict.

Bearing in mind the essential element that 12 fully participating jurors reach a unanimous verdict, we have examined section 1089 and conclude that when properly construed it does not trench upon that element. Section 1089 provides that the trial court may in its discretion call

alternate jurors and that the alternate jurors must be selected from the same source as the other jurors, in the same manner, with the same qualifications, and subject to the same challenges. Alternates are provided equal opportunity to see and hear all of the proceedings. They take the same oath as the other jurors and must attend trial with them. They are bound by the orders and admonitions of the court, and if confinement is ordered they are confined with the other jurors prior to final submission of the case. After final submission they are sequestered apart from the deliberating jurors.

■ Substitution is allowed before final submission for death or illness of a regular juror or when a juror cannot continue to serve for other good cause. In such an event the 12 qualified jurors have not only heard and observed all the proceedings from equivalent vantage points, but in addition each has fully participated in the deliberations.

■ Section 1089 makes identical provision for substitution after final submission to the jury. It fails, however, to require expressly that each of the 12 jurors reaching the verdict fully participate in the deliberations. Although a statutory direction to such effect would raise issues of constitutional dimensions, a proper construction of section 1089 requires that deliberations begin anew when a substitution is made after final submission to the jury. This will insure that each of the 12 jurors reaching the verdict has fully participated in the deliberations, just as each had observed and heard all proceedings in the case. We accordingly construe section 1089 to provide that the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that one of its members has been discharged and replaced with an alternate juror as provided by law; that the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had. We are confident that juries made aware of the rights involved will faithfully follow such instructions.[4]

---

[4]Non-California authorities cited by defendant which forbid substitution of an alternate after jury deliberations have commenced are not persuasive. In *People* v. *Ryan* (1966) 19 N.Y.2d 100 [278 N.Y.S.2d 199, 224 N.E.2d 710] the New York Court of Appeals addressed substitution of an alternate juror after deliberations had commenced under the authority of a statute similar to section 1089. The statute provided for the substitution of alternates after final submission for death, illness, or other good reason,

■ We next address defendant's contention that good cause within the meaning of section 1089 was not shown for the dismissal of the original juror. He argues that inquiry into the possible existence of good cause for dismissal of a juror after deliberations have begun must be

---

and specified, " '[T]he jury shall then renew its deliberations with the alternate juror. ...' " (*Id.,* at pp. 101-102.) In reversing on state constitutional grounds the court in effect reasoned that the substituted alternate had not participated in all deliberations which led to the verdict. (*Id.,* at pp. 103-105.) We also perceive as error the failure of an alternate to fully participate in the deliberations, but we correct the error by construction of section 1089.

In *United States v. Lamb* (9th Cir. 1975) 529 F.2d 1153, an alternate juror was substituted for a regular juror after almost four hours of deliberations. The newly constituted jury returned a verdict 29 minutes after the instructions had been reread and the trial court advised it to " 'begin at the beginning, and begin all your deliberations just as if the case had been submitted to you this instant.' " (*Id.,* at p. 1155.) The court based reversal on the mandatory provisions of Federal Rules of Criminal Procedure, rule 24(c) and expressly declined to express an opinion on defendant Lamb's Fifth Amendment due process argument. (*Id.,* at p. 1156, fn. 4.) Rule 24(c) provides that alternates shall replace jurors unable to perform their duties prior to the time the jury retires and that alternates who have not replaced regular jurors "shall be discharged" after the jury has retired. Section 1089, on the other hand, provides no mandatory procedural bar to post-submission substitution and instead purports to authorize such substitution.

Both defendant and *Lamb* cite commentaries on rule 24(c). 2 Wright, Federal Practice and Procedure (1969) section 388, at page 52, discusses the mandatory language of the rule and states that it is reversible error to substitute an alternate after deliberations have begun, citing *People* v. *Ryan, supra,* 19 N.Y.2d 100. Wright continues discussing proposed amendments to the rule to allow post-submission substitution. He critically observes that such substitution would require the alternate to miss part of the deliberations or be present during deliberations before needed, citing inter alia *Ryan* and Orfield, Trial Jurors in Federal Criminal Cases (1962) 29 F.R.D. 43.

Orfield discusses the history of rule 24(c) observing that an early draft provided for post-submission substitution of alternate jurors. He reports, without explanation, that after the proposal was submitted to the Supreme Court for comment it inquired whether the drafters had satisfied themselves that post-submission substitution was desirable or constitutional. (*Id.,* at p. 46.) The drafters thereafter abandoned the provision.

American Bar Association Standards Relating to Trial by Jury (1968) standard 2.7 at pages 78-79, provides for alternate jurors, but allows substitution only prior to the time the jury retires to deliberate. Commentary to the standard rejects the approach of section 1089 expressing the drafters' belief "that it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without the benefit of the prior group discussion," citing *Ryan, supra,* and Orfield, *supra.* (*Id.,* at p. 82.)

Both Wright, *supra,* and the American Bar Association commentary state that the problem cannot be avoided by requiring the silent presence of unsubstituted alternates during deliberations. We agree. (*People v. Britton* (1935) 4 Cal.2d 622 [52 P.2d 217, 102 A.L.R. 1065]; *People v. Adame* (1973) 36 Cal.App.3d 402, 406-409 [111 Cal.Rptr. 462]; *People v. Bruneman* (1935) 4 Cal.App.2d 75, 79-81 [40 P.2d 891].)

A defendant may of course waive the right to have the jury instructed to begin its deliberations anew. (See *People v. Lankford* (1976) 55 Cal.App.3d 203, 210-211 [127 Cal.Rptr. 408].) In *Lankford* a juror was substituted on defendant's motion after deliberations had begun. The dicta in *Lankford* relying on *People v. Lanigan, supra,* 22 Cal.2d 569, is disapproved.

■

designed to elicit a factual basis to support such good cause having an existence independent of the deliberative process of the jury. He perceives the danger that the deliberative process alone may bring great pressure to bear on individual jurors who may seek relief by feigning illness or asking to be discharged, and urges that in discharging the juror and appointing an alternate neither good cause nor a basis independent of the deliberative process was demonstrated.

■ "[T]he trial court has at most a limited discretion to determine that the facts show an inability to perform the functions of a juror, and that inability must appear in the record as a demonstrable reality." (*People* v. *Compton* (1971) 6 Cal.3d 55, 60, fn. omitted [98 Cal.Rptr. 217, 490 P.2d 537]; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 124-127 [32 Cal.Rptr. 4, 383 P.2d 412].) ■ In the instant case the trial court questioned the juror extensively and she stated several times that she could not decide the case on the evidence and the law since she was involved emotionally more than intellectually. Although she asked to read the jury instructions she could not say that reading them would help her. The court reminded her of her obligation to deliberate based on the law and the evidence introduced at the trial and not on emotional or personal bias, and it advised her that she did not have to like the verdict that the law compelled. The court asked whether her present state of mind resulted from duress or coercion; she answered that it did not. The juror said she arrived at her state of mind prior to the commencement of deliberations and that her professed inability to follow the court's instructions was not the result of anything that had occurred since deliberations began. The extensive hearing in which the juror steadfastly maintained that she could not follow the court's instructions, that she had been upset throughout the trial and that she wanted to be excused, clearly justified a conclusion that she could not perform her duty and thus established good cause for her discharge. Requiring in the instant case that the court demand of the juror the factual basis for her emotional involvement would have added nothing since she denied that her state of mind was the result of duress or coercion or that it stemmed from the deliberative process. Her discharge herein would have been proper even if she was unable to articulate affirmative reasons for her state of mind. Under the circumstances the court had little choice but to discharge her.

Defendant's contention that he was placed twice in jeopardy by the substitution of an alternate juror without legal necessity or his consent

need not be addressed. The discharge of the juror for good cause amounted to a legal necessity.

 There was of course no instruction given in the instant case meeting the requirements we hold applicable to situations where an alternate juror has been substituted after commencement of deliberations. The court merely advised the jurors of the fact that a substitution had been made and directed them to retire to the jury room and deliberate. The final question thus before us is whether the error herein requires reversal. We conclude that reversal is not required.

The evidence shows that three young marines were robbed at knifepoint by defendant and two others while all were traveling in a car on a freeway. The three marines were in the back seat with a fourth person who apparently was under the influence of drugs and did not participate. Defendant was in the front seat with his two accomplices, one of whom was driving. Defendant displayed a knife and demanded the marines' wallets. One of the accomplices held the same knife to the throat of one of the marines at some point. Taken from the victims was a total of about $150. One of the marines testified to the events of the robbery and positively identified defendant. The marine who had had the knife held to his throat testified to the same events in substance but was unable to state with certainty that defendant was or was not among the robbers. The third marine identified defendant in rather confused testimony. The People also called defendant's accomplices as witnesses. One had pleaded guilty to aiding and abetting in the commission of a robbery and the other to second degree robbery. Both admitted participating in the robberies and both identified defendant as their accomplice.

The case against defendant is very strong. Certainly there appears no reasonable probability that a more favorable verdict would have been returned had the jury been properly instructed following the substitution. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[5] The error was thus harmless and nonprejudicial.

---

[5]When as here the error is not of federal constitutional dimensions and does not fall within certain exceptions not here applicable, we are committed to the prejudicial error rule enunciated in *People* v. *Watson, supra,* 46 Cal.2d 818, without regard to whether the error offends fundamental as compared to other rights. (*Id.,* at p. 835.) We noted with approval in *Watson* "that generally, error involving the infringement of a constitutional right, like any other error, requires a further determination whether the defendant has been prejudiced, and the final test is the 'opinion' of the reviewing court, in the sense of

The judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Appellant's petition for a rehearing was denied September 8, 1976.

---

its belief or conviction, as to the effect of the error. . . ." (See *People* v. *O'Bryan* (1913) 165 Cal. 55[130 P. 1042].)