**FILED**

**OCTOBER 25, 2016**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33714-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DALE TUCKER, JR., | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Dale Tucker, Jr., appeals his convictions for residential burglary

and third degree theft. He contends the trial court's failure to instruct the jury that

deliberations must include all twelve jurors at all times deprived him of a fair trial and

unanimous jury verdicts. Since Mr. Tucker shows no manifest error affecting a

constitutional right, we decline to address this issue raised for the first time on appeal and

affirm the convictions.

## FACTS

The State charged Mr. Tucker with residential burglary and second degree theft. The case proceeded to a jury trial. The State produced evidence that Mr. Tucker was prohibited by a court order from entering his deceased grandmother Betty Durfee's residence near Newport. On May 8, 2015, Mr. Tucker unlawfully entered the residence and was recorded on video taking meat from a freezer in the kitchen. The video showed Mr. Tucker pulling his shirt up over his face when he saw the cameras. Among items missing from the residence were food, heaters, a radio, and antlers. Mr. Tucker's cousin Robert Bradbury had set up cameras inside and outside the Durfee residence. Mr. Bradbury and another cousin, Cheyenne Bradbury, each identified Mr. Tucker as the person in the kitchen video and in outdoor still pictures recorded on May 8. A sheriff's deputy who had known Mr. Tucker since grade school likewise identified him as the person in the kitchen video. The defense did not present any evidence.

There were no objections to the jury instructions or requests for additional instructions. Instruction 2 provided in part:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors[.]

Clerk's Papers at 22. Instruction 19 set out the deliberations process and unanimity requirement for the jury to return a verdict.

2

The jury found Mr. Tucker guilty of residential burglary and lesser degree third degree theft. The jury reached its verdict in approximately 51 minutes. Mr. Tucker appealed the judgment and sentence.

## ANALYSIS

### 1. *Claimed Instructional Error*

Mr. Tucker contends that by failing to instruct the jury that its deliberations must involve all twelve jurors collectively at all times, the trial court violated his right to a fair trial and unanimous verdicts.

Mr. Tucker did not request such an instruction below, nor did he otherwise object to the trial court's instructions given. Thus, RAP 2.5(a) precludes him from raising this issue for the first time on appeal unless he can show that lack of the additional instruction is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In assessing whether a claimed error is "manifest," the trial record must be sufficiently complete for this court to determine whether the asserted error "actual[ly] prejudice[d]" the appellant by having "practical and identifiable consequences [at] trial." *Id.* at 98-99 (citations omitted). "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

3

The Washington State Constitution requires that in a criminal prosecution an impartial jury render a unanimous verdict. Const. art. I, §§ 21, 22; *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014). As further recognized in *Lamar*:

> The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint.

*Id.* at 585 (quoting *People v. Collins*, 17 Cal. 3d 687, 693, 552 P.2d 742, 131 Cal. Rptr. 782 (1976)); *see also State v. Fisch*, 22 Wn. App. 381, 383, 588 P.2d 1389 (1979) (citing 12-juror consensus requirements as stated above in *Collins* and finding no violation).

Mr. Tucker asserts the trial court's failure to instruct the jury that deliberation may only occur when all twelve jurors are present collectively is manifest constitutional error because it left his jurors with "not just theoretical" opportunities for improper deliberations that would violate the "common experience" requirement for constitutionally valid unanimity. Br. of Appellant at 13. For example, he posits that because the jury reached verdicts on two counts in less than one hour on a summer Friday afternoon, there is a reasonable probability the presiding juror sped up the process to finish before the weekend by dividing the jury in two, with six jurors deciding each count and each group agreeing to follow the recommendation of the other. He also contends it is likely that one

4

or more jurors left the jury room to use the restroom while the remaining jurors continued to discuss the case, yet the record fails to show the jury was ever properly instructed not to engage in such improper deliberations. Finally, he contends there is a reasonable possibility that some jurors discussed the case outside of every other juror's presence—whether by telephone, over lunch, simply walking to and from the jury room, or even in the jury room itself—and the court gave no admonishment against such discussions.[1]

Mr. Tucker's arguments are based on pure speculation about juror conduct or what might have occurred during deliberations. No facts in the record support his example allegations that any juror failed to follow the court's instructions or otherwise acted improperly, that deliberations ever lacked a jury member, or that the verdicts were not the unanimous consensus of all twelve jurors. He thus shows no manifest error affecting a constitutional right and we decline to address the merits of his nonpreserved claim of error.[2]

---

[1] The record shows the trial court did give such admonishments to the jury at the outset of trial, as well as a similar instruction at the close of the first day of trial and again at the lunch recess on the second day of the two-day trial. *See* Suppl. Report of Proceedings at 6-15; Report of Proceedings at 149, 253-54.

[2] We do observe that Mr. Tucker's cited cases involving manifest constitutional error for unanimity violations when the court failed to instruct the jury to start deliberations anew upon seating of an alternate juror are inapposite because no alternate juror was seated here. *See Lamar*, 180 Wn.2d at 586; *State v. Blancaflor*, 183 Wn. App. 215, 224-25, 334 P.3d 46 (2014); *State v. Ashcraft*, 71 Wn. App. 444, 462-64, 859 P.2d 60 (1993). Mr. Tucker cites no other authority that manifest constitutional error occurred here.

## 2. *Appellate Costs*

Mr. Tucker requests that we exercise our discretion and decline to award appellate costs to the State if he does not prevail on appeal. He reasons that the trial court found he lacks sufficient funds to prosecute an appeal and was therefore indigent and entitled to review at public expense. Analogizing to *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015) (trial court must make individualized findings of current and future ability to pay before imposing legal financial obligations), he asserts his ability to pay must be determined before appellate costs are imposed. The State has not responded to Mr. Tucker's request.

RAP 14.2 states, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." Under RCW 10.73.160(1), we have broad discretion to grant or deny appellate costs to the prevailing party. *See State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612 (2016). Although Mr. Tucker has made his request in his opening brief as suggested by *Sinclair*, he has not moved to extend time in order to comply with this court's June 10, 2016 general order governing requests to deny an appellate cost award. Given the timing of the filing of Mr. Tucker's opening brief (April 29, 2016, prior to the filing of our general order), we deny his request without prejudice to his prompt filing of a motion to

No. 33714-6-III
*State v. Tucker*

extend time and the motion and supporting updated financial disclosure required by our general order.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.

7