Filed 12/22/23  P. v. Randhawa CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>IQBAL SINGH RANDHAWA,<br><br>　　　Defendant and Appellant. | A163938<br><br><br>(Solano County<br>Super. Ct. No. FCR347029) |

Defendant was convicted by a jury of 12 counts of grand theft/embezzlement (Pen. Code, §§ 487, 506),[1] one count of failure to provide travel services or return moneys (Bus. & Prof. Code, § 17550.14, subd. (a)(1)), and one count of encumbering money from a trust account (Bus. & Prof. Code, § 17550.15, subd. (c)).  The court also found true the allegation that defendant was out on bail when he committed two of the embezzlement charges.  On appeal, defendant argues for reversal based on the trial court's failure to instruct the jury, after seating an alternate juror, to disregard prior

---

[1] All statutory references are to the Penal Code unless otherwise stated.

deliberations and to begin deliberations anew. We find prejudicial error and reverse.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Information*

Defendant was charged in an amended information with 18 counts of grand theft/embezzlement in violation of Penal Code sections 487 and 506. Each count involved a separate victim. As to counts 17 and 18, the amended information alleged defendant committed the embezzlements while he was out on bail. (Pen. Code, § 12022.1.) In addition, the amended information alleged defendant failed to provide travel services or return money in violation of Business and Professions Code section 17550.14, subdivision (a)(1) (count 19) and encumbered money from a trust account in violation of Business and Professions Code section 17550.15, subdivision (c) (count 20).[3]

### II. *Trial Testimony*

The jury trial lasted four days. Eighteen witnesses testified, and 42 exhibits were admitted into evidence.

Fifteen individual victims testified that they purchased airline tickets from defendant for travel between the United States and either India or Pakistan. The majority of the victims paid for their tickets by making deposits into the defendant's bank account. Although they were provided with travel itineraries, the victims later learned that they did not have valid tickets or that they only had one-way tickets instead of round-trip tickets.

---

[2] By separate order filed this date, we deny defendant's petition for writ of habeas corpus (case No. A167332) as moot.

[3] At the close of trial, counts 10 and 16 were dismissed because the complaining witnesses as to those counts did not appear for trial. The remaining counts were renumbered.

2

Most of them received no refund from defendant. Others received either partial refunds or refund checks that bounced. One victim provided defendant with his credit card information to pay $3,000 for three airline tickets and later learned that defendant charged an additional $50,000 to the victim's credit card. When the victim called defendant to complain about the overcharge, defendant said it was an error and that he would repay the victim. Defendant made three payments to the victim, for a total of $8,000, but did not repay the balance.

A regional sales manager of Sky Bird Travel testified that Sky Bird Travel is a consolidator for airlines and contracts directly with airlines to negotiate reduced airfares. Sky Bird then sells the reduced-rate tickets to travel agents to sell to their clients. M & K Travel Services[4] registered with Sky Bird Travel in 2018, and defendant was listed as the primary contact. Defendant defaulted on about $38,000 owed to Sky Bird Travel. Sky Bird Travel contacted defendant by phone, by email, and in person, seeking payment of the debt. Defendant said he would pay " 'tomorrow,' " but he never did.

Department of Justice Investigative Auditor Shirley Weber testified that prior to 2000, defendant operated as a sole proprietorship. He was a registered seller of travel[5] with the department's seller of travel program. As a registered seller of travel, defendant is required to deliver a ticket within 72 hours, or three days, after payment is made. Otherwise, the customer is entitled to a refund.[6] During Weber's investigation of defendant, Weber

---

[4] In 2000, defendant incorporated as M & K Travel Services, Inc.

[5] "Seller of travel" is a regulatory term that applies to those who sell, advertise and arrange for travel services.

[6] Weber also testified that in 2004 and 2005, she investigated about 30 consumer complaints against M & K Travel Services. Civil and criminal

3

received a letter from defendant admitting that M & K Travel Services owed reimbursement to one of the victims and that a refund check for $5,600 that defendant gave to the victim bounced.

## III. *Jury Deliberations and Instructions*

On July 30, 2021, a Friday, the trial court instructed the jury. Following closing arguments, the original 12 jurors left to begin deliberations. The trial court asked the alternate jurors to remain in the courtroom and stated: "The record will reflect the jury has departed. My to [*sic*] alternates are here. [¶] . . . [W]hat's going on now is that the jury is going to begin deliberating and you all are still alternates. You don't get to deliberate because there are 12 of them. [¶] If someone has a family emergency this afternoon and can't be here, I am going to call you up. I am going to start calling [Alternate Juror Number 1] first. The reason I am telling you not to discuss or make up your mind is, if they are deliberating— let's just say, next Monday, and I lose a juror. When I bring you in [Alternate Juror Number 1], they have to start from the beginning. They don't get to tell you, we have worked out the first eight. Hop on in. Let's ride this out. [¶] No, we start from the beginning and you—your opinions from the beginning get counted and deliberated. Same thing, [Alternate Juror Number 2]. If we have two and there's been—we figured out the first 16. No, it starts from the beginning and that can be the second time. So it's important you not make up your mind. Don't talk about it." (Some

---

charges were filed against defendant, and his seller of travel registration was suspended. In 2006, the Travel Consumer Restitution Corporation, a nonprofit, nongovernment entity, paid nearly $200,000 in consumer claims for amounts owed by M & K Travel Services. Defendant pleaded guilty to grand theft in 2010.

capitalization omitted.) This admonition was not given to the original 12 deliberating jurors.

On July 30, 2021, the jury deliberated from 11:01 a.m. to 3:45 p.m. This time period included any recesses the jury may have taken for lunch and breaks, the lengths of which were not recorded. The court adjourned until the next court date, which was Wednesday, August 4, 2021, at 9:00 a.m.

On August 4, 2021, outside the presence of the jury, the trial court reported to counsel for the parties that a juror contacted the court to state that she could not continue on the jury due to work obligations. The trial court stated it contacted an alternate juror and asked for any comments from the parties. Neither the prosecutor nor defense counsel raised any issues. The trial court then stated, outside the presence of the other 11 jurors: "Let's get [Alternate Juror Number 1] sworn in. [¶] As I think I told you last week, you would be the first one we would call. They were here Friday, so they haven't deliberated much; and they'll have to start fresh, the deliberating process. I'll get you sworn in as a juror and send you down to the jury deliberation room." The alternate was sworn in and sent to the jury deliberation room.

The reconstituted jury deliberated on August 4, 2021, from 9:15 a.m. to 3:30 p.m., inclusive of unrecorded time for recesses for lunch and any other breaks. At 11:50 a.m. on August 4, 2021, the jury requested a readback of testimony from one of the individual victims.

Deliberations continued on August 5, 2021, from 9:00 a.m. to 4:20 p.m. At 9:50 a.m., the jury requested a readback of testimony from another individual victim, and at 1:15 p.m., it requested a readback of the testimony

from the Sky Bird Travel regional sales manager. At 4:20 p.m., the jury returned its verdict.[7]

The jury convicted defendant of 12 counts of grand theft/embezzlement (Pen. Code, §§ 487, 506; counts 1, 2, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16), one count of failure to provide travel services or return moneys (Bus. & Prof. Code, § 17550.14, subd. (a)(1); count 17), and one count of encumbering money from a trust account (Bus. & Prof. Code¸ § 17550.15, subd. (c); count 18). Defendant was acquitted of four counts of grand theft/embezzlement (counts 3, 8, 9, 10). The trial court found the "out-on-bail" enhancement true as to two of the embezzlement counts.

On October 21, 2021, defendant was sentenced to a total of nine years four months in county jail.

## DISCUSSION

Defendant claims his Sixth Amendment right to a unanimous verdict was violated because the trial court failed to instruct the entire jury to disregard previous deliberations and to begin deliberations anew when the alternate juror was substituted for one of the original jurors who could not continue serving. The People argue there was no error; the claim is forfeited; and that even if there were error, it was harmless. We find that defendant did not forfeit his claim and that the trial court prejudicially erred when it failed to instruct the reconstituted jury to disregard previous deliberations and begin anew.

---

[7] The reporter's transcript for the day the verdict was returned appears to be misdated. It is dated August 4, 2021, but the court clerk's reading of the verdicts states they were "[s]igned by foreperson dated August 5, 2021." The clerk's transcript includes minutes stating the verdicts were returned on August 5, 2021. Both parties cite to the minutes in the clerk's transcript and agree that the verdicts were returned on August 5, 2021.

## I.      *Legal Principles*

Section 1089 states, in relevant part, "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."  The statute does not specifically provide that the reconstituted jury must be instructed to set aside its earlier deliberations and begin anew.  (§ 1089.)  Nearly 50 years ago, however, our high court construed section 1089 to require that the trial court provide such an instruction to avoid violating a defendant's constitutional right to a jury trial provided by the California Constitution.  (*People v. Collins* (1976) 17 Cal.3d 687, 693–694 (*Collins*), disapproved on another ground in *People v. Boyette* (2002) 29 Cal.4th 381, 462, fn. 19; Cal. Const., art. I, § 16.)

As explained in *Collins, supra:* "Among the essential elements of the right to trial by jury are the requirements that a jury in a felony prosecution consist of 12 persons and that its verdict be unanimous.  [Citations.] [¶] . . . The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them.  It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11.  Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member.  Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his

7

or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity." (17 Cal.3d at p. 693.)

*Collins, supra*, held that the following instruction is required when an alternate juror is substituted after deliberations have begun: "We accordingly construe section 1089 to provide that the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that one of its members has been discharged and replaced with an alternate juror as provided by law; that the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining juror must set aside and disregard the earlier deliberations as if they had not been had." (17 Cal.3d at p. 694.)[8]

---

[8] CALCRIM No. 3575 includes the *Collins* language. It states: "One of your fellow jurors has been excused and an alternate juror has been selected to join the jury.

"Do not consider this substitution for any purpose.

"The alternate juror must participate fully in the deliberations that lead to any verdict. The People and the defendant[s] have the right to a verdict reached only after full participation of the jurors whose votes determine that verdict. This right will only be assured if you begin your deliberations again, from the beginning. Therefore, you must set aside and disregard all past deliberations and begin your deliberations all over again.

8

## II.    *Defendant's Claim Is Not Forfeited*

The People argue that defendant's claim is forfeited because defense counsel failed to object to the trial court's "manner of instruction" when it instructed the alternate juror.  Defendant correctly argues that when an alternate juror is substituted on a jury, the trial court has a sua sponte obligation to instruct the reconstituted jury to disregard all past deliberations and begin deliberations anew.  (*Collins, supra*, 17 Cal.3d at pp. 693–694.)  As discussed *post*, the trial court failed to comply with this obligation.  The required instruction affects defendant's substantial rights to a unanimous jury and is not forfeited by his failure to raise it below.  (*People v. Renteria* (2001) 93 Cal.App.4th 552, 560; § 1259.)

## III.    *Trial Court Erred*

The People argue that based on the trial court's statements made to the alternate juror, there is no reasonable likelihood that the jury misunderstood its task.  According to the People, the trial court's admonition to the alternate juror, " '[Y]our opinions from the beginning get counted and deliberated . . . . They'll have to start fresh, the deliberating process," was sufficient because if we presume the alternate followed this instruction, "it means he could not have allowed the other jurors to tell him they had decided any of the counts without his input."  If the other jurors told the alternate that certain counts or issues had already been decided, then the alternate was required to inform them that the trial court instructed him that this procedure was improper.

The People's argument speculates as to what may have happened during deliberations, and they offer no authority for the concept that the trial

---

Each of you must disregard the earlier deliberations and decide this case as if those earlier deliberations had not taken place.

"Now, please return to the jury room and start your deliberations from the beginning."

9

court may delegate its duty to instruct the jury to a single alternate juror. We reject the People's argument as contrary to the law. (See CALCRIM No. 200 [Jurors must follow the law as *explained by the court*, and if an attorney's comments on the law conflict with the court's instructions, the jury *must follow the court's instructions*].) Although the trial court instructed the alternate juror, "They'll have to start fresh, the deliberating process," it failed to give the same instruction to the entire jury.

Moreover, the instruction given to the alternate juror was only a portion of CALCRIM No. 3575. Even the alternate juror was not told that the jury was required to disregard all prior deliberations. In *People v. Martinez* (1984) 159 Cal.App.3d 661, 665, the appellate court found that instructing the jury to " 'resume their deliberations starting over with the new trial juror' " was *Collins* error because the trial court did not inform the jury to set aside and disregard all past deliberations. *Martinez* explained, "The error in failing to admonish a jury to disregard all past deliberations is that it introduces the likelihood that the opinions and feelings of a juror who was discharged may be used by the panel as finally composed in arriving at a verdict. This obviously runs a foul [*sic*] of *Collins* because, if that happens, the decision is not entirely that of the 12 jurors who ultimately reach the verdict." (*Ibid*.) The same is true here where the reconstituted jury was never instructed to disregard all past deliberations and begin deliberations anew. The trial court's admonition to just the alternate juror of only a portion of CALCRIM No. 3575 does not adequately inform the entire jury of the proper procedure it was required to follow once the alternate was seated.

10

## IV. *Prejudice*

*Collins* held that an error in instructing the jury upon substitution of an alternate juror is subject to harmless error review under the *Watson* test,[9] which asks whether it is reasonably probable that a more favorable verdict would have been returned had the jury been properly instructed following the substitution. (*Collins, supra*, 17 Cal.3d at p. 697.) *Collins* explained that the "reasonably probable" standard applied because the instructional error impacted the defendant's right to a unanimous verdict provided under the California Constitution. (*Collins*, at p. 692, fn. 3.) The *Watson* test applies to wrongly omitted instructions that do not amount to federal constitutional error. (*People v. Hendrix* (2022) 13 Cal.5th 933, 942 (*Hendrix*).)

At the time *Collins* was decided, the United States Supreme Court had ruled that the federal Constitution does not require unanimous jury verdicts in state criminal trials. (*Collins, supra*, 17 Cal.3d at p. 692, fn. 3; *Apodaca v. Oregon* (1972) 406 U.S. 404, 406 [32 L.Ed.2d 184].) Thus, at the time *Collins* was decided, the stricter *Chapman* harmless error standard,[10] which asks whether the error was harmless beyond a reasonable doubt, was not applicable to this type of instructional error.

However, defendant contends that the recent decision in *Ramos v. Louisiana* (2020) ___ U.S. ___ [206 L.Ed.2d 583], which held that the Sixth Amendment's unanimity requirement applies to state and federal trials equally (*id.* at p. 591), requires that the instructional error at issue here should be decided under the *Chapman* harmless error standard. The People argue that neither *Ramos* nor any other United States Supreme Court case has decided the more specific question of whether the Sixth Amendment

---

[9] *People v. Watson* (1956) 46 Cal.2d 818, 836.

[10] *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].

11

requires that upon substitution of an alternate juror during deliberations, a trial court must instruct the jury to disregard earlier deliberations and begin deliberations anew. We need not decide which standard applies because we find prejudice even under the *Watson* reasonably probable standard. As our high court has explained, reasonable probability in the context of the *Watson* standard " ' " 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*Hendrix, supra*, 13 Cal.5th at p. 944.)

In determining prejudice, we may consider "whether the case is a close one and compare the time the jury spent deliberating before and after the substitution of the alternate juror." (*People v. Proctor* (1992) 4 Cal.4th 499, 537 (*Proctor*).) We also may consider the complexity of the case. (*Martinez, supra*, 159 Cal.App.3d at p. 665.) Here, the original jury deliberated from 11:01 a.m. to 3:45 p.m. on July 30, 2021, approximately 4 1/2 hours, less any unrecorded recesses for lunch or other breaks. The alternate was substituted on the morning of Wednesday, August 4, which was the next court date. The reconstituted jury then deliberated from 9:15 a.m. to 3:30 p.m. on August 4th, and from 9:00 a.m. to 4:20 p.m. on August 5th, less unrecorded recesses for lunch or other breaks. Although the reconstituted jury deliberated approximately three times as long as the original jury, the original jury deliberated for a significant period of time on July 30th. Thus, the facts here are distinguishable from other cases that have found no prejudice based, in part, on the minimal duration of deliberations before substitution. (See, e.g., *Collins, supra*, 17 Cal.3d at pp. 690, 697 [no prejudice where original jury deliberated for little more than an hour]; *Proctor, supra*, 4 Cal.4th at p. 537 [no prejudice where original jury deliberated for less than an hour before substitution and two and a half days after substitution]; *People v. Guillen*

12

(2014) 227 Cal.App.4th 934, 1031–1032 [no prejudice where duration of original jury's deliberation was "minimal" and reconstituted jury deliberated for nine days].)

The People argue that the case was not complex and that the evidence of guilt was conclusive. We agree that there was substantial evidence of defendant's guilt as to the counts on which the jury convicted, including the testimony of multiple individuals and investigator Weber. However, this does not end our inquiry.

We disagree with the People that the case was "devastatingly simple." As defendant notes in his briefing, even the prosecutor acknowledged the complexity of the case during closing argument. Eighteen counts were submitted to the jury; there were 18 witnesses and 42 exhibits. There were 16 individual victims who testified about separate interactions with defendant. Defendant did not call any witnesses and, instead, argued the People did not prove two of the four elements of grand theft by embezzlement: that defendant fraudulently converted or used the money for himself, or that he intended to convert the money for his own personal use. The record establishes that there was a significant amount of testimony and exhibits for the jury's evaluation. Further, the jury did not convict on all counts. It deliberated for approximately three days, which included one day before the substitution with the alternate juror, and it requested readbacks of testimony from three witnesses. We find that this record indicates the case was far closer than the People claim. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 [jury questions and requests for readback indicate close case]; see *People v. Perry* (1985) 166 Cal.App.3d 924, 933 [four days of deliberation and acquittal on some counts suggested close case].)

13

The People argue that the four counts on which the jury acquitted are easily explained and do not detract from their position that any error was harmless.  As to the acquittals on counts 8, 9, and 10, the evidence was that the victim's losses were under $950.  According to the People, the jury was instructed that in order to convict, it had to find that the victims suffered a loss of at least $950.  The People fail to provide a record citation for the jury instruction given.  Our own review of the record establishes that the jury instruction given was CALCRIM No. 1806, theft by embezzlement (§§ 484, 503), which does not state a minimum dollar amount of loss.  Accordingly, we reject the People's position that three of the four acquittals are easily explained by the jury instructions.[11]

The People also argue that the fact that the verdict forms for counts 1–10 are dated August 4, and the verdict forms for counts 11–18 are dated August 5, suggests that the jury considered the counts in the order charged. They further contend that because the jury's first readback request, which was made at 11:50 a.m. on August 4, related to count 3, this suggests that the jury did not even begin consideration of count 4 until August 4th.  The People concede that it is possible the jury considered counts 1, 2, and 3 before the alternate was seated, but they claim the record shows that the jury did not consider counts 4–18 until after the alternate was seated.  Thus, the People contend, there can be no prejudice "at least as to counts 4 through 18."

---

[11] The jury also acquitted defendant of count 3, as to which Harman S. testified that he paid defendant $2,400 for airline tickets to India.  The People concede that as to this count it is possible the jury believed there was some doubt as to whether the defendant or another person was responsible for the fraud.  This further suggests to us that the case was closer than the People contend.

14

The People's argument is heavy on speculation. Moreover, we find it highlights the likelihood of prejudice resulting from the failure to properly instruct the jury to disregard all prior deliberations and begin anew once the alternate was seated. Because this instruction was not given, the likelihood remains that "the opinions and feelings of a juror who was discharged may be used by the panel as finally composed in arriving at a verdict." (*Martinez, supra*, 159 Cal.App.3d at p. 665.) We do not know whether the original jury reached verdicts on certain counts or whether it simply considered the viewpoints and impressions of each member. However, we do know that the original jury deliberated for a significant amount of time on July 30th and the jury was not instructed to disregard those deliberations and begin anew when the alternate was seated. Although the reconstituted jury deliberated for two more days, we find that the first day of deliberation by the original jury was for a significant amount of time in which opinions and impressions were likely formed as to at least some of the issues or counts. (See *id.* at p. 666 [finding prejudice in a close case where jury deliberated approximately 2 1/4 hours before substitution, which was "sufficient time to formulate the danger that is likely without the proper instruction," despite fact that the jury deliberated six days after substitution].)

Based on the circumstances of this case, which includes numerous counts, witnesses, and exhibits, and the not insignificant period of deliberations by the original jury, we find prejudicial error. The failure to instruct with CALCRIM No. 3575 was certainly not harmless beyond a reasonable doubt. (*Chapman, supra*, 386 U.S. at p. 24.) Nor can we find that there is no reasonable probability that a more favorable verdict would have been returned had the jury been properly instructed following the

15

substitution.  (*Watson, supra*, 46 Cal.2d at p. 836; *Martinez, supra*, 159 Cal.App.3d at pp. 665–666.)

## DISPOSITION

The judgment is reversed.


Jackson, P. J.


WE CONCUR:

Burns, J.
Chou, J.


A163938/*People v. Iqbal Singh Randhawa*