Filed 10/3/24  P. v. Pacheco CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EMMANUEL PACHECO,<br><br>    Defendant and Appellant. | C098192<br><br>(Super. Ct. No. 20FE015862) |

Shortly after a jury began deliberating on two gun-related charges against defendant Emmanuel Pacheco, the trial court substituted an alternate juror to replace a juror who had a family emergency.  The jury ultimately found Pacheco guilty on both counts.  On appeal, Pacheco argues that the trial court erred because it did not instruct the jury to set aside its prior deliberations and begin deliberating anew when the alternate juror was empaneled.  Pacheco also notes an error in the abstract of judgment.  The People concede both errors but argue that reversal is unwarranted because the instructional error was not prejudicial.  We conclude that the instructional error was harmless, affirm the judgment, and direct that a corrected abstract of judgment be issued.

1

BACKGROUND

I.

Following an argument between two groups of people near a liquor store, a gunman opened fire, striking the victim and leaving her paralyzed. The People charged Pacheco with assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b); count one) and possession of a firearm by a prohibited person (§ 29820; count two).[1] The prosecution also alleged that he had a prior strike conviction. (§§ 667, subds. (b)–(i), 1170.12.)

Witnesses identified the source of the gunfire as the group of which Pacheco was a member. The group was near a van, across the liquor store parking lot from the victim.

The primary issue at trial was whether Pacheco or someone else in his group was the shooter. Pacheco argued that either Thomas Epps or Sergio Morales had fired the shots.

B.O., the van's driver, testified for the prosecution under a grant of immunity. There were six other people in the van, including Pacheco, Epps, and Morales. As the group was leaving the liquor store, one of the passengers realized she had lost her phone. B.O. parked in the parking lot in front of a gym. After the three men got out of the van, she heard a noise and turned to see Pacheco shooting a gun. She saw him pulling the trigger and heard gunshots but did not see muzzle flashes. He was shooting toward the liquor store. Epps and Morales were not standing with Pacheco, and Pacheco was the only person she saw firing or holding a gun.

After the shooting, the group got back in the van, and B.O. drove away. At some point, a police car drove up behind them. Pacheco told B.O. not to pull over, but she did anyway. Pacheco and Epps exited the van and fled. Both were detained by police shortly thereafter.

_____

[1] Undesignated statutory references are to the Penal Code.

A detective interviewed one of the van passengers. She identified Pacheco as the shooter and said she did not see any of the other men in the van with a gun. She was uncertain but was "pretty sure" Pacheco was the shooter. She said she had not seen any flashes coming from the firearm. She did not see "anything sticking out of the bottom" of the firearm and answered affirmatively when the detective asked if the firearm looked like an "old western kind of gun[]" such as a revolver. She did not think Epps had a gun. At trial, she denied telling the detective she heard gunshots or saw who was shooting.

A different passenger testified that she did not see who fired the shots, but Pacheco had "kind of like a smirk, but not really a smirk" on his face. She also said that Pacheco was carrying a gun after the shooting.

Deputies found a nine-millimeter Glock semiautomatic firearm with an extended magazine in a bush near where Pacheco and Epps had exited the van. The magazine was wrapped in a blue handkerchief. Police also searched the parking lot where the shooting occurred and found 27 shell casings and one bullet fragment that had been fired from the firearm in the area where the van had been. There were no shell casings in front of the liquor store. A criminalist found gunshot residue on Pacheco and Epps, suggesting that they had handled a firearm, discharged a firearm, or were near a firearm when it was fired.

## II.

The jury began deliberating on March 21, 2022, at 2:45 p.m. At 3:01 p.m., the jury asked the trial court to see the firearm and extended magazine, the handkerchief found with the firearm, and shell casings; the court produced the exhibits for the jury. At 4:30 p.m., the court adjourned for the day.

At 9:00 a.m. the next morning, a juror stated that the juror had a family emergency and needed to go to the airport. The parties agreed to substitute a random alternate juror. At 9:28 a.m., the drawing was held, and the alternate juror arrived at 9:55 a.m. The jurors began their deliberations without receiving further instructions.

3

At 10:32 a.m., the jury requested a readback of the testimony of four witnesses: the three women who had been in the van and the detective who interviewed one of them. The court reporter began the readback at 11:34 a.m. At 4:27 p.m., the jury asked for clarification about a typographical error on the verdict form for count two. The trial court recessed for the day at 4:30 p.m.

The jury resumed deliberations at 9:07 a.m. the next morning. The trial court provided a corrected verdict form for count two. At 2:41 p.m., the jury announced it had reached verdicts.

The jury found Pacheco guilty of both counts. As to the assault charge, the jury found true the allegation that he personally used a semiautomatic firearm (§ 12022.5, subds. (a), (d)), but found not true the allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (b)). The trial court later found true a prior strike conviction allegation and imposed a total aggregate sentence of 22 years.

DISCUSSION

I.

Pacheco contends that the trial court erred when it failed to instruct the jury to set aside its deliberations and begin deliberating anew after the court replaced the departing juror with an alternate. We agree that the court committed error but conclude that it was harmless even under the more stringent harmless-beyond-a-reasonable-doubt standard.

Section 1089 authorizes substitution of an alternate juror before or after final submission of the case to the jury on a showing of good cause. Our state Supreme Court addressed this provision in *People v. Collins* (1976) 17 Cal.3d 687, superseded by statute on another ground as stated in *People v. Boyette* (2002) 29 Cal.4th 381, 462, footnote 19. The court explained that, under the state constitution's jury-trial guarantee, a "defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity." (*People v. Collins*, *supra*, 17 Cal.3d at pp. 692-693, fn. 3.) The "requirement that 12 persons reach a unanimous verdict is not

4

met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11." (*Id.* at p. 693.) The court thus concluded that when a juror is replaced after the case has been submitted, a trial court must instruct the jury to set aside past deliberations and begin deliberating anew. (*Id.* at p. 694.)

CALCRIM No. 3575, the pattern instruction given in cases of postsubmission substitution, reads as follows: "One of your fellow jurors has been excused and an alternate juror has been selected to join the jury. [¶] Do not consider this substitution for any purpose. [¶] The alternate juror must participate fully in the deliberations that lead to any verdict. The People and the defendant(s) have the right to a verdict reached only after full participation of the jurors whose votes determine that verdict. This right will only be assured if you begin your deliberations again, from the beginning. Therefore, you must set aside and disregard all past deliberations and begin your deliberations all over again. Each of you must disregard the earlier deliberations and decide this case as if those earlier deliberations had not taken place. [¶] Now, please return to the jury room and start your deliberations from the beginning."

The trial court here did not give this instruction when it substituted the alternate juror. Nor does it appear from the record that the court provided any similar direction to the jury to disregard past deliberations and begin deliberating anew. We thus agree with the parties that the trial court erred.

Our state Supreme Court has applied the harmless error standard in *People v. Watson* (1956) 46 Cal.2d 818 to this type of instructional error. (*People v. Collins*, *supra*, 17 Cal.3d at p. 697.) Under *Watson*, a court determines whether there is a "reasonable probability that a more favorable verdict would have been returned had the jury been properly instructed following the substitution." (*Ibid.*) When applying this test, California courts "consider whether the case is a close one and compare the time the jury

spent deliberating before and after the substitution of the alternate juror." (*People v. Proctor* (1992) 4 Cal.4th 499, 537.) The closeness of a case may involve consideration of the case's complexity. (See *People v. Martinez* (1984) 159 Cal.App.3d 661, 665.)

Pacheco contends that we should use the more stringent standard set forth in *Chapman v. California* (1967) 386 U.S. 18, which applies to federal constitutional errors. Under *Chapman*, reversal is required unless a reviewing court concludes "beyond a reasonable doubt that the jury verdict would have been the same absent the error." (*People v. Schuller* (2023) 15 Cal.5th 237, 261.) Pacheco notes that when *Collins* was decided, the United States Supreme Court had concluded that the federal Constitution did not require unanimous jury verdicts in state criminal trials. (*People v. Collins*, *supra*, 17 Cal.3d at p. 692, fn. 3.) The United States Supreme Court has since revisited that conclusion, holding in *Ramos v. Louisiana* (2020) 590 U.S. 83, 93 that "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally." Pacheco assumes that, after *Ramos*, the failure to instruct jurors to set aside prior deliberations and begin deliberating anew offends both the Sixth Amendment and the state constitution. He also assumes that, under *Chapman*, the considerations relevant to measuring prejudice are the same as those under *Watson* (i.e., the closeness of the case and the amount of time spent deliberating before and after substitution).

Assuming without deciding that Pacheco's assumptions are correct, we conclude that the trial court's error was harmless beyond a reasonable doubt. In this case, the jury deliberated for less than two hours before recessing for the evening, and the trial court substituted an alternate juror the next morning. The jury then continued deliberating for the next day and a half, reviewing the testimony of key witnesses and noting a typographical mistake on the verdict form. The majority of the time deliberating occurred after the substitution.

Additionally, the evidence against Pacheco was strong. Multiple witnesses identified Pacheco as the person firing the gun or saw him holding a gun shortly after the

6

shooting. Although one of the witnesses later denied identifying Pacheco, she had no explanation for the change in her statements and offered only a vague statement that she could no longer remember being at the scene of a shooting. Notably, the jury requested a readback of the testimony of each of these witnesses after the substitution—a fact that supports the conclusion that the substituted juror was part of the deliberations on the key issue in the case. In contrast, the evidence that the jury requested before the substitution—the firearm and its accessories—had no apparent connection to this issue.

Pacheco contends that compelling testimony undermined his identity as the shooter, but we read that testimony differently. While the witness he cites provided a description of the shooter that did not match Pacheco, the witness admitted that he saw the shooter only briefly. The witness also testified that he had not seen anyone shooting a gun, that he could not see "anything specific" about the people near the van, and that he had been intoxicated at the time.

Pacheco also points out that the jury found not true the allegation that he personally inflicted great bodily injury. That does not, however, establish that this was a close case, given the evidence identifying Pacheco as the shooter, the jury's guilty verdicts, and its true finding that Pacheco personally used a firearm.

We conclude that the trial court's instructional error was harmless beyond a reasonable doubt.

## II.

"An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) " 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.' " (*Ibid.*)

The parties agree that the abstract of judgment in this case incorrectly checks the boxes indicating that Pacheco was convicted after a court trial, rather than a jury trial.

7

We agree as well and therefore direct the trial court to correct the abstract to indicate that the jury convicted Pacheco of both counts.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment to reflect the fact that Pacheco was convicted of both counts in a jury trial.  The trial court is further directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                       /s/                     

                       FEINBERG, J.


We concur:


 /s/                     

HULL, Acting P. J.


 /s/                     

KRAUSE, J.